NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 22, 2015[*]
Decided July 27, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-3417

| | |
|---|---|
| MICHAEL COLEMAN,<br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 12 C 3842 |
| PARTHASARATHI GHOSH, *et al.*,<br> *Defendants-Appellees*. | Edmond E. Chang,<br>*Judge*. |

### O R D E R

Michael Coleman, an Illinois prisoner, appeals the grant of summary judgment for prison medical personnel in this deliberate-indifference suit under 42 U.S.C. § 1983. Coleman had experienced pain after knee surgery and a back injury, and he claimed that the defendants did not effectively treat his pain or provide prescribed physical therapy. But Coleman presented no evidence suggesting that the medical staff failed to exercise their professional judgment in treating him, so we affirm the district court's judgment.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Except as noted, we recount the facts in the light most favorable to Coleman, as the party opposing summary judgment. *See Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). In December 2010 Coleman had surgery to repair torn cartilage in his right knee. Upon returning to the prison after his surgery, Coleman saw Dr. Parthasarathi Ghosh, who approved the surgeon's recommendation for physical therapy and issued medical permits for crutches and a knee brace, a low bunk, and the use of handcuffs in the front instead of the back (as they usually are applied). Dr. Ghosh also prescribed over-the-counter pain medications and told Coleman to begin applying weight to his knee as tolerated. The next day Coleman was discharged from the health center with no complaints and only minimal swelling. He followed up with doctors in the weeks after his surgery, both at the hospital and the prison, and was observed to be healing well and walking without assistance. In March Coleman wrote a formal complaint saying that his knee was bothering him and that he had not yet received physical therapy, and medical personnel scheduled him to be seen later that month. Coleman saw physician's assistant LaTanya Williams and Dr. Ghosh in March, and told them that he had not yet started physical therapy. Dr. Ghosh wrote another referral for therapy. During this visit, Coleman tells us, he complained about knee pain, though no complaint of knee pain is documented in Dr. Ghosh's progress note for this visit.

Then in May 2011 Coleman hurt his back when he fell in a stairwell, an incident he attributes to his injured knee giving way. A few days later, and three more times over the next two months, he visited a physical therapist. During his first visit, Coleman complained that he was experiencing too much back pain to do the exercises. The physical therapist did not detect a medical basis for Coleman's reported pain and thus told him that he needed to see a doctor before therapy sessions could go forward. Coleman saw Dr. Ronald Schaefer in June 2011 and complained about his knee pain, and the doctor prescribed a narcotic pain killer. The doctor did not restrict him from doing physical therapy. But at each following therapy appointment, Coleman said his back hurt too much to do the exercises, and in July 2011 the physical therapist discharged him because he refused to participate.

In response to Coleman's continued complaints of knee pain, Dr. Imhotep Carter ordered an X-ray and prescribed steroid injections to help with inflammation and encourage healing, and pain medication. Coleman made four more visits to Dr. Carter in 2011, during which the doctor, who suspected that Coleman was exaggerating his symptoms, reviewed the X-ray and examined Coleman's knee and concluded that it was normal and that the surgery site had healed and stabilized. At one of the visits, Coleman told Dr. Carter that the steroid had helped but did not eliminate his knee pain, so

Dr. Carter ordered an MRI of the knee, renewed Coleman's medical permits, and scheduled a follow-up appointment. The doctor met with Coleman once more before the end of 2011; he prescribed narcotic pain killers and also suggested a physical-therapy regimen that Coleman could do on his own. Meanwhile, Coleman says, he had been sending letters to medical personnel complaining about unresolved pain in his knee and back. Those letters were screened by prison administrators, but there is no evidence that they were forwarded to the medical staff. Coleman started seeing a different doctor in 2012, and the new physician diagnosed an irregular kneecap, scarring from the surgery, and mild swelling in his knee. The doctor did not observe any inflammation in his back, however, and more X-rays showed that his knee and back were normal.

Coleman then sued physician's assistant Williams; doctors Ghosh, Schaefer, and Carter; and Wexford Health Sources, which employs all of them. Coleman claimed that the defendants had been deliberately indifferent to his serious medical needs by failing to timely provide physical therapy and by failing to treat his knee and back pain. In granting summary judgment for the defendants, the district judge concluded that Coleman had not presented evidence that any defendant departed from accepted professional norms by ordering X-rays and MRIs and prescribing pain killers, injections, crutches, and movement restrictions. And though Coleman alleged that doctors ignored his complaints of pain, the district judge explained, he pointed to no evidence to show that he saw doctors and complained of pain but was not treated. The judge also noted that Coleman had never presented evidence that his written complaints about pain were forwarded to the defendants. The district court finally concluded that Coleman lacked evidence that Wexford had a policy or custom requiring doctors to limit their treatment and therefore could not be liable under § 1983.

Coleman's appellate brief is the same document he submitted in opposition to the defendants' motion for summary judgment and does not comply with Federal Rule of Appellate Procedure 28(a). Noncompliance with Rule 28, in particular its requirement that an appellant make an argument, is ground for dismissal, *see* FED. R. APP. P. 28(a); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), but the defendants have not asserted that we should enforce this rule. At all events, our de novo review of the record convinces us that the district court properly granted summary judgment for the defendants.

We can easily dispose of Coleman's contention about physical therapy. He asserts that he fell on the stairs and injured his back because the lack of prompt physical therapy after surgery had weakened his knee, but he presented no evidence tying his fall to the

delay in starting physical therapy. *See Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). And Coleman's refusal to participate in physical therapy contradicts his claim that the defendants were deliberately indifferent to his needs. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

To survive summary judgment on his theory that the doctors denied constitutionally adequate treatment for his knee and back pain, Coleman needed to present evidence that "no minimally competent" doctor would have chosen that course of treatment. *See Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). Federal courts will not second-guess a prison physician's treatment decision unless that choice was so "significant a departure from accepted professional standards or practices" that it's questionable whether the physician actually exercised professional judgment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Here, Coleman stated during his deposition that he was in pain and that he told doctors at various times that his back was "killing" him. That would constitute evidence that he was in pain, though he did not point to this testimony in any of his submissions at summary judgment. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) (noting that district courts are not required to sift record for evidence helpful to opponent of motion for summary judgment).

Still, his testimony changes nothing. Despite Coleman's statements that he complained to doctors about his pain, he also acknowledges that the defendants provided a variety of treatments, including pain killers (both over-the-counter and narcotic), exercise regimens, braces, movement restrictions, injections, X-rays, and MRIs. And he provided no evidence that he told the doctors the pain medication was not working. While Coleman may think the medical attention he received was inadequate, that disagreement with the defendants' treatment plans is insufficient to overcome summary judgment. *See Pyles*, 771 F.3d at 409; *Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006).

Finally, because Coleman did not present evidence of an underlying constitutional violation, the district court correctly concluded that Wexford cannot be liable for deliberate indifference. *See Pyles*, 771 F.3d at 412.

AFFIRMED.