```
┌─────────────────────────────────────────────┐
│            NONPRECEDENTIAL DISPOSITION        │
│  To be cited only in accordance with Fed. R. App. P. 32.1  │
└─────────────────────────────────────────────┘
```

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 22, 2019[*]
Decided April 22, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-2300

| | |
|---|---|
| BRIAN D. BROADFIELD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 1:16-cv-1092 |
| | |
| DAN WILLIAMS, | Sara L. Darrow, |
| *Defendant-Appellee*. | *Chief Judge*. |

## O R D E R

Brian Broadfield, a federal inmate who was briefly in Illinois custody, has sued a medical officer for violating the Eighth Amendment in two respects. First, Broadfield accuses the officer of recklessly ignoring the risk that Broadfield would suddenly stop taking his medication for depression and anxiety and suffer withdrawal effects. Second, he contends that the officer disregarded his back pain. During the litigation, Broadfield filed many discovery motions, but the district judge denied them and later entered

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

summary judgment against him. Because the district court reasonably dealt with the pre-judgment motions and properly entered summary judgment, we affirm.

We begin with the first issue—Broadfield's discontinuation of his medicine—and we recount the facts in the light most favorable to him, the opponent of summary judgment. *See Giles v. Tobeck*, 895 F.3d 510, 512 (7th Cir. 2018). In early 2014, Dan Williams (a physician's assistant with a PhD in clinical psychology) prescribed medicine to treat Broadfield's depression and anxiety. When Broadfield reported side effects from the drugs, he stopped taking them, and Williams put Broadfield on Cymbalta instead. Broadfield told Williams that Cymbalta caused nausea, so Williams tapered him off that and prescribed a different drug. Broadfield experienced more side effects, which he says Williams and other medical staff not did not warn him about, so he stopped taking the other drugs. In April of the following year, Broadfield asked Williams to put him back on Cymbalta, and Williams did. Initially the drug helped, but soon Broadfield felt that the drug was not working. Without consulting Williams, he stopped taking Cymbalta. Soon after, he experienced symptoms from his sudden (non-tapered) withdrawal, including "flashes in the head," "headaches," and "electrical shocks in the head." Those symptoms lasted approximately four months. Once alerted to those symptoms, Williams prescribed different drugs to treat Broadfield.

The second issue concerns back pain, which Broadfield complained about in May 2015. Williams prescribed painkillers and ordered an x-ray, which showed that Broadfield was suffering from spondylosis (age-related wear and tear affecting the spinal discs). The next month, Broadfield complained that one of the drugs was not working, so Williams changed his medicine. Broadfield next complained in August, when Williams saw him four times for back pain. Williams changed Broadfield's drugs many times that month. Near the end of August Broadfield fell, and Williams prescribed ice, pain relievers, and an x-ray. That x-ray was consistent with the earlier x-ray and revealed no evidence of fractures or dislocations in his back. Williams then saw Broadfield in September and prescribed Mobic. Two months later, Broadfield again complained of back pain, so Williams ordered imaging for a third time (an MRI), which again showed that Broadfield was suffering from spondylosis. After that, Broadfield transferred to another jail and was no longer in Williams's care.

In this suit, Broadfield aggressively pursued discovery. He first asked the court to issue subpoenas: to the pharmacy (that supplied Cymbalta) for information about his prescription; to his jail for its medical policies and protocols; and to Eli Lilly, the maker of Cymbalta, for information about the drug. Second, he asked the court to recruit

counsel for him. Third, he moved the district court to compel discovery from Williams, including his employment contracts, jail policies, correspondence with supervisors, and Medicare enrollment forms. Finally, Broadfield moved the court to extend discovery. The court denied these motions. On the subpoenas, it explained that the pharmacy had no relevant information about the prescriptions for Cymbalta; Broadfield already had copies of the applicable jail policies; and Eli Lilly was outside of the court's subpoena power. *See* FED. R. CIV. P. 37(a)(2). The judge declined to recruit counsel for Broadfield because he appeared capable of litigating his case. As for the motions to compel discovery, Broadfield had not attached to the motion Williams's responses to his requests, as required; he already had copies of the applicable policies; and the other requests were not relevant. The court declined to extend the discovery because it had gone on for over a year and nothing relevant remained to discover.

The district court later entered summary judgment for Williams. On the first claim (that Williams recklessly failed to warn Broadfield about the risks of withdrawing from Cymbalta suddenly), the court gave two reasons: No evidence suggested that "the risk of withdrawal symptoms was particularly significant," or that Williams "knew the symptoms posed a substantial risk of serious damage to [Broadfield's] health." Broadfield's claim that Williams was deliberately indifferent to his back pain also failed. The judge explained that Williams's decision to prescribe painkillers and obtain three images of Broadfield's back, "all of which showed that [Broadfield] was suffering from a degenerative condition and not an acute injury," was reasonable.

On appeal, Broadfield contends that Williams culpably failed to warn him of the risks of stopping Cymbalta; due process, he says, entitled him to "such information as is reasonably necessary to make an informed decision to accept or reject treatment." But the provision that applies is the Eighth Amendment, and Williams violated it only if he recklessly ignored a substantial risk of harm to Broadfield's health. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). No evidence suggests that Williams recklessly disregarded a danger that Broadfield would suddenly stop taking Cymbalta. When Williams first prescribed Cymbalta to Broadfield and he experienced nausea, Broadfield did not stop taking the drug suddenly. Rather, he notified Williams about his side effects. This allowed Williams to taper Broadfield off the drug safely. When Broadfield later asked Williams to prescribe Cymbalta again, Williams thus reasonably believed that Broadfield would take it as prescribed and not halt his intake without notice to Williams.

Another problem dooms Broadfield's claim: he cannot show that Williams caused his injury. *See Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010) (citing *Berman v. Young*, 291 F.3d 976, 982 (7th Cir. 2002)). Broadfield decided for himself that Cymbalta was ineffective, and he alone decided to halt his intake. The injury that Broadfield complains about, therefore, is that he was injured by *his choice* to stop taking Cymbalta. As the "intervening cause" of his injury, he cannot subject Williams to liability. *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) ("[T]he ordinary rules of tort causation apply to constitutional tort suits.").

Broadfield offers two responses, but neither is persuasive. First, he argues that he sometimes stopped taking *other* drugs without notifying Williams, so Williams should have known that Broadfield might suddenly stop taking Cymbalta. But when Williams stopped taking these other drugs, it was because of their side effects, not because (as with Cymbalta) he considered the drug ineffective. And because Broadfield asked to *return* to Cymbalta, Williams could reasonably assume that Broadfield would tolerate its side effects. In any case, a doctor's belief that a patient who is prescribed a drug will take it as prescribed is not "blatantly inappropriate" or lacking in medical judgment. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Second, Broadfield argues that Williams was a "learned intermediary" who had a duty to inform him of the risks of Cymbalta. But that is an argument about medical malpractice, not deliberate indifference. *See Whiting*, 839 F.3d at 662.

Broadfield next argues that his claim that Williams was deliberately indifferent to his back pain should go to a jury. He contends that the conservative treatment that Williams used was ineffective and he should have referred Broadfield to a specialist. But Broadfield was not entitled to his preferred set of medications and treatments, so long as Williams did not act recklessly. *See Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). And no evidence suggests that Williams was reckless. To the contrary, he quickly obtained images of Broadfield's spine after Broadfield complained of back pain. He tried to alleviate Broadfield's pain by altering his medications many times. And after Broadfield fell down steps, Williams ordered an x-ray and MRI to see if Broadfield was suffering from an acute injury. These decisions (and the decision not to refer Broadfield to a specialist) fall easily within his professional judgment. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (x-rays); *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (physician not deliberately indifferent for failure to refer inmate to specialist because physician responded to inmate's complaints of back pain and ineffective medications "by prescribing new medications or changing the dosages"). They therefore do not

create an inference of deliberate indifference. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017); *McGee v. Adams*, 721 F.3d 474, 481–82 (7th Cir. 2013).

The above analysis might be altered if any of Broadfield's challenges to the district court's pre-judgment rulings on discovery were unsound, but as we are about to explain, they all fell within the court's broad discretion. *See Gonzalez v. City of Milwaukee*, 791 F.3d 709, 713 (7th Cir. 2015) (motion to compel); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 622–23 (7th Cir. 2014) (motion to extend discovery); *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc) (motion to recruit counsel); *McNeil v. Lowney*, 831 F.2d 1368, 1373 (7th Cir. 1987) (issuing subpoenas).

We begin with Broadfield's requests for subpoenas. The district court correctly noted that Broadfield had already received the policies that he wanted subpoenaed from the jail, so it reasonably protected the jail from duplicative discovery. *See* FED. R. CIV. P. 45(d). It also reasonably refused to subpoena the pharmacy about what it told Williams about Cymbalta. Williams's awareness of the side effects of withdrawal are irrelevant because, as we have already explained, he did not recklessly ignore a risk that Broadfield would stop taking Cymbalta. The court also permissibly denied Broadfield's request to subpoena Eli Lilly because that company is located outside of its subpoena power. Broadfield now argues that the court should have transferred his request to the proper court. Because he did not raise this request below, we need not consider whether the district court abused its discretion in refusing to grant an unmade request. *See S.E.C. v. Yang*, 795 F.3d 674, 679 (7th Cir. 2015).

The court's treatment of Broadfield's other discovery requests was also reasonable. In denying Broadfield's motion to compel jail policies from Williams, the court (as we just mentioned) correctly observed that Williams had provided these policies. The court also reasonably ruled that the Williams's employment contract, correspondence with supervisors, and Medicare enrollment forms would not bear on the question of deliberate indifference to Broadfield. And because Broadfield's other motion to compel did not comply with the court's procedures requiring that he attach his discovery requests to the motion, the court permissibly enforced the procedures for litigation. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). The district court also reasonably denied Broadfield's motion to extend discovery because discovery had been open for more than a year and Broadfield did not identify any specific information that he needed. *See Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056–57 (7th Cir. 2000).

Finally, the district court also reasonably declined to recruit counsel for Broadfield. The district judge applied the correct legal standard, *see Pruitt*, 503 F.3d at 654–55, and reasonably concluded that, based on the quality of Broadfield's filings, Broadfield's knowledge of the facts, and his ability to obtain discovery, he could adequately litigate his case. We see no abuse of discretion.

AFFIRMED