Dee FARMER, Plaintiff–Appellant,

v.

Edward BRENNAN, et al.,
Defendants–Appellees.

No. 94–3787.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1995.

Decided April 26, 1996.

Michael J. Gonring (argued), Virginia H. Jones, Quarles & Brady, Milwaukee, WI, Jeffrey F. Orchard, Washington, DC, for Plaintiff–Appellant.

Christa A. Reisterer, Leslie Herje (argued), Office of the United States Attorney, Madison, WI, for Edward J. Brennan.

Christa A. Reisterer, Office of the United States Attorney, Madison, WI, for Dennis Kurzydlo, Calvin R. Edwards, Larry E. DuBois, N.W. Smith and J. Michael Quinlan.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In this case, we return to Dee Farmer's suit against a number of federal prison officials claiming violations of the Eighth Amendment. Farmer, a pre-operative transsexual who is still biologically male, brought a *pro se* action under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in 1991, claiming that the defendants had violated her[1] Eighth Amendment rights when they transferred her from the Federal Correctional Institution in Oxford, Wisconsin, to the U.S. Penitentiary in Terre Haute, Indiana. After the district court dismissed the case and this Court affirmed in an unpublished order, the Supreme Court granted certiorari to decide whether the correct standard for Eighth Amendment liability had been applied. In *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Court clarified the test for liability and remanded the case for further proceedings. On remand, the district court promptly dismissed again, ruling 92 days after the case returned to it. Because the court acted so quickly, without giving Farmer a meaningful opportunity to respond to the Supreme Court's action, we remand for further proceedings.

I

Farmer is serving a twenty year federal sentence for credit card fraud, which was imposed in 1986 when she was 18 years old. She has been diagnosed by medical personnel at the Bureau of Prisons as a transsexual, a condition defined by the American Medical Association's 1989 Encyclopedia of Medicine as a "rare psychiatric disorder in which a person feels persistently uncomfortable about his or her anatomical sex." Transsexuals typically seek medical treatments to

---

1. Farmer uses the female pronoun to refer to herself, despite the fact that she is still biological- ly male. We will respect that preference in this opinion.

change their physical sexual traits. Farmer is no exception. For several years prior to her conviction, she wore women's clothing, underwent estrogen therapy, and received silicone breast implants. At one point, she apparently had an unsuccessful testicle-removal operation. We express no view here on whether transsexualism is properly categorized as a "disorder." It is enough for present purposes to note that all parties agree that Farmer in fact was and is a transsexual and that she projects feminine characteristics.

Over the years since her conviction, Farmer has served time in a number of federal prisons, including the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, the U.S. Penitentiary in Lewisburg, Pennsylvania, the Federal Correctional Institution in Petersburg, West Virginia, the Federal Correctional Institution in Oxford, Wisconsin ("FCI–Oxford"), and the U.S. Penitentiary in Terre Haute, Indiana ("USP–Terre Haute"). This case concerns her March 9, 1989, transfer from FCI–Oxford to USP–Terre Haute. In a complaint filed on August 20, 1991, and amended on December 13, 1991, Farmer claimed that the defendant prison officials knew that, because of her transsexualism and the violent environment at USP–Terre Haute, she would be in physical danger and particularly vulnerable to sexual attack if the transfer took place. In the face of this knowledge, the defendants either transferred her to USP–Terre Haute or placed her in its general population. She alleged that, on April 1, 1989, less than a month after the transfer, she was raped and beaten by an unidentified inmate in her cell at USP–Terre Haute. Based on these events, Farmer claimed that the defendants were deliberately indifferent to her safety and thus violated her Eighth Amendment rights. She sought compensatory and punitive damages and an injunction barring future confinement in any "penitentiary" (as opposed to other types of correctional facilities).

The complaint named six defendants: J. Michael Quinlan, then the Director of the Federal Bureau of Prisons ("BP"), and Calvin Edwards, Regional Director for the BP,

in their official capacities; Edward Brennan, the Warden of FCI–Oxford, Dennis Kurzydlo, a case manager at FCI–Oxford, Larry E. DuBois, a former Regional Director of the BP, and N.W. Smith, the former Correctional Services Administrator for the BP, all in their individual and official capacities.

Between the August 1991 original complaint and the December 1991 amended complaint, Farmer filed several discovery requests. On September 23, she served a Request for Production of Documents on Brennan and Interrogatories on Kurzydlo. On December 11, she served another Request for Production of Documents on Quinlan. On November 1, Kurzydlo answered the interrogatories, and Brennan responded to the document request. Brennan turned over documents related to Farmer's transfer and those related to her placement in a penitentiary environment. Although he identified documents discussing Farmer's transsexualism, he refused to release these documents to her for fear that the documents might be seen by others in the prison environment. The December 11 document request, however, went unanswered even after the district court denied the defendants' motion to dismiss on December 24, 1991.

Farmer then filed a motion to compel discovery, which the district court partially granted on January 24, 1992. The court focussed specifically on the September 23 request, in which she had asked for "any and all documents in the plaintiff's Central or Medical File that refer or otherwise indicate her to have a gender disorder or problem, including transsexualism...." The court permitted Farmer to review documents listed by the defendants, and upon further request, it agreed to require the defendants to produce documents for *in camera* review. Farmer followed up with a request for review of additional documents on March 4, 1992, and after its *in camera* review, the court denied her motion to compel. Again the December 11 Request went unanswered.

Meanwhile, on February 18, 1992, the defendants filed a motion for summary judgment supported by affidavits. Farmer in turn filed a motion under Rule 56(f) on

March 8.[2] She appears to have thought that the motion would serve as a vehicle to compel responses to the December 1991 discovery requests. In any event, she indicated that she needed further discovery in order to respond to the defendants' summary judgment motion. She also filed her own motion for summary judgment and an opposition to defendants' motion, supported by the documents she had been able to collect. The defendants then followed up on March 17, 1992, with a motion for a protective order against further discovery on the ground that it would be improper in light of the defense of qualified immunity they had raised in the summary judgment motion.

On March 23, 1992, the district court granted the defendants' motions for summary judgment and for the protective order. It denied Farmer's Rule 56(f) motion. Farmer had mistakenly indicated in the motion that the responses to her December 11, 1991, Request for Production were due on March 14 (why we are not sure), which was after the date the court had set for a response to the summary judgment motion. Thus the court concluded that responses to the Rule 56(f) motion could be of no help in resolving the summary judgment motions because they would be untimely. Upon Farmer's appeal to this Court, the district court's judgment was summarily affirmed. The Supreme Court then vacated that decision and remanded for further proceedings.

The Supreme Court began by reiterating the two requirements for a finding that a prison official has violated the Eighth Amendment: "[f]irst, the deprivation alleged must be, objectively, sufficiently serious," and second, "a prison official must have [had] a sufficiently culpable state of mind," which in the prison condition cases means "deliberate indifference, to inmate health or safety." —— U.S. at ——, 114 S.Ct. at 1977 (internal quotations omitted). The Court then clarified the term "deliberate indifference," holding:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at ——, 114 S.Ct. at 1979. The Court underscored the fact that it was adopting a subjective test, in contrast to the objective standard of · negligence articulated in cases like Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). It dismissed Farmer's concern that a subjective test would leave prison officials free to ignore obvious dangers to inmates with this observation:

> Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

—— U.S. at ——, 114 S.Ct. at 1981 (citations omitted).

In the balance of its opinion, the Court offered guidance for Farmer's own case on remand. First, the Court expressed its concern that the district court may have placed decisive weight on Farmer's failure to notify the defendants of a risk of harm. That would have been error, the Court explained, since a plaintiff may establish the defendants' knowledge with "any relevant evidence." Id. at ——, 114 S.Ct. at 1984. Furthermore, and more generally, the Court explicitly stated that "[t]he summary judgment record does not so clearly establish [the prison officials'] entitlement to judgment as a matter of law on the issue of subjective knowledge that we can simply assume the absence of error

---

**2.** The Docket Sheet lists the Rule 56(f) as filed on March 18, but our review of it shows that it was clearly stamped March 8. The difference is not material to the case at this point.

below." *Id.* Finally, the Court said that it could not be certain that additional evidence was unavailable to Farmer, because the district court's denial of the Rule 56(f) motion may have been inspired by its mistaken view on the failure to notify. *Id.* at ——, 114 S.Ct. at 1985. Although the Court left the decision whether to permit additional discovery up to the district court in the first instance, it called for "application of the Eighth Amendment principles explained" in the opinion. *Id.* It also left the defendants free to develop arguments relating to Farmer's damages claims against them based on their alleged lack of responsibility for conditions at Terre Haute and their lack of control over placements there. *Id.*

On remand, the district court moved with dispatch. The remand actually arrived at the court on August 6, 1994. Two days later, the court entered a scheduling order, setting August 22, 1994, as the deadline for summary judgment motions and setting a trial date of October 6, 1994. On August 22, the defendants moved for summary judgment and furnished six affidavits by prison officials, explaining the transfer and their role in it. Farmer's response was due on September 12. On August 26, Farmer moved to transfer the case to the Judicial Panel on Multidistrict Litigation with the hope of consolidating it with a number of other actions she then had pending in the federal courts.[3] On September 7, Farmer's lawyer moved to withdraw, on the ground that he could not manage the case as a solo practitioner. He also moved for appointment of new counsel, for an extension of time in which to respond to the defendants' summary judgment motion, and for further discovery under Rule 56(f) for materials not covered by Farmer's still unanswered December 11, 1991, request.

Twenty-four hours later, on September 8, the district court denied Farmer's August 26 and September 7 motions, but it did not mention the 1992 Rule 56(f) motion. Farmer moved again for a 180 day continuance for additional discovery on September 13. Within two days, the court had denied that motion

and reaffirmed its October 6 trial date. On September 21, Farmer moved yet again for a 180 day continuance for discovery purposes. The next day, the court acknowledged the long-pending December 11, 1991, Request to Produce Documents when it directed Quinlan to respond by October 5 to one paragraph of that Request. At the same time, it gave Farmer until November 1 to respond to the summary judgment motion. Still seeking more time for discovery, Farmer moved on September 30 for a 180 day continuance. On October 4, 1994, the court denied her latest motion, finding that counsel could have undertaken further discovery at any time after the remand. Finally, on November 10, 1994, the court granted the appellees' motion for summary judgment.

The court's order began by reviewing the background of Farmer's transfer from Oxford to Terre Haute. In pertinent part, the court found as follows:

> Defendants Brennan and Kurzydlo had no reason to believe that plaintiff would be subjected to a substantial risk of harm as a result of his [sic] transfer to USP–Terre Haute. Defendants DuBois, Smith and Quinlan had no personal involvement in the decision to transfer plaintiff.

> Defendant Edwards was not involved in the decision to transfer plaintiff to USP–Terre Haute. Defendant Edwards had no reason to believe plaintiff could not function safely in the general population at USP–Terre Haute.

The court criticized Farmer for failing to oppose the defendants' motion for summary judgment, stating: "Plaintiff and his [sic] counsel are fully aware of their responsibility to respond to defendants' motion for summary judgment and have chosen not to. They are more interested in adjournments and delay than a timely and just resolution of the matter." Finding that the defendants "did not have knowledge of underlying facts from which they could have drawn the inference that a substantial risk of serious harm existed for plaintiff at USP–Terre Haute in

---

**3.** In September 1994, Farmer had five cases pending before other district courts around the country: *Dee Farmer v. A.F. Beeler, et al.,* No. 93–M–1253 (D.Col.); *Dee Farmer v. United States of*

*America,* No. 94–M–1220 (D.Col.); *Dee Farmer v. P.K. Mothersead, et al.,* No. 92–3074–CV–S–4 (W.D.Mo.); and *Dee Farmer v. Kathleen M. Hawk,* No. 92–1690 (D.D.C.).

March 1989, nor did those underlying facts even exist," the court concluded that no Eighth Amendment violation had occurred.

## II

With all due respect for the district court, we do not believe that this was the kind of remand that the Supreme Court contemplated. The key problem is the court's refusal to allow Farmer's lawyer to develop the record on the defendants' summary judgment motion so that an informed decision on the existence of genuinely disputed facts (or the lack of any such facts) would be possible. Before this Court, Farmer's new counsel also argues that she gleaned enough from the record developed before the Supreme Court's decision to survive summary judgment, or at least to indicate a good faith basis for granting a new Rule 56(f) motion.

■ We review a district court's grant of summary judgment under Rule 56 *de novo*, to the extent the question is whether there were genuine disputes of material facts or whether the moving party should prevail as a matter of law. *East Food & Liquor, Inc. v. United States*, 50 F.3d 1405, 1410 (7th Cir. 1995). This case, however, deals with the relationship between a motion under Rule 56 and the discovery process. The Supreme Court has recognized that the district court's decision about the existence of factual disputes depends on the ability of the nonmoving party to come forward with concrete materials that demonstrate such a dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir.1994). The nonmoving party's ability to do so, in turn, will often depend on the progress it has made in discovery. Rule 56 itself addresses these two points through subsections (e) and (f). Under Rule 56(e), when a Rule 56 motion has been made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." What if the adverse party, for legitimate reasons, has not yet gathered its supporting materials? Rule 56(f) allows that party to bring its problems to the court's attention, and the court is empowered either to refuse the application for summary judgment or to grant a continuance to permit the necessary discovery.

■ This Court has noted that the party seeking further time to respond to a summary judgment motion must give an adequate explanation to the court of the reasons why the extension is necessary. *Korf v. Ball State University*, 726 F.2d 1222, 1230 (7th Cir.1984). When a party is unable to gather the materials required by Rule 56(e), the proper course is to move for a continuance under Rule 56(f). *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 317 (7th Cir.1987). As is true for most matters relating to discovery, the district court has substantial discretion in ruling on a Rule 56(f) motion, and this Court therefore reviews its decisions only for abuse of discretion. *United States v. All Assets and Equipment of West Side Building Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995), *cert. denied sub nom., Penny v. United States*, —— U.S. ——, 116 S.Ct. 698, 133 L.Ed.2d 656 (1996).

In spite of the considerable latitude that the abuse of discretion standard gives to the district court, it is plain that in some circumstances an immediate ruling on a summary judgment motion will cross the line from the permissible to the impermissible. For example, in *Dean v. Barber*, 951 F.2d 1210, 1213–14 (11th Cir.1992), the court held that it was an abuse of discretion to grant summary judgment where a district court had never ruled on a pretrial detainee's motion to compel discovery. Summary judgment, it explained, should not be granted until the party opposing the motion has had an adequate opportunity for discovery. The record did not reflect whether the sheriff had furnished complete responses to the plaintiff's interrogatories or why the court had not compelled answers to other interrogatories. The court concluded "[b]ecause the district court abused its discretion by ignoring Dean's motion to compel, the grant of summary judgment on a potentially inadequate record was improper and must be vacated." *Id.* at 1214.

**1450**

The Court of Appeals for the District of Columbia Circuit came to a similar conclusion in a suit claiming violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d). *First Chicago International v. United Exchange Co.*, 836 F.2d 1375 (D.C.Cir.1988). In that case, the district court had converted a motion under Rule 12(b)(6) into a summary judgment motion, but it had not given all parties a reasonable opportunity to pursue discovery. Even though no formal Rule 56(f) affidavit had been filed, the court found that "other documents filed by the plaintiff—such as opposing motions and outstanding discovery requests—sufficed to alert the district court of the need for further discovery and thus served as the functional equivalent of an affidavit." *Id.* at 1380. Just as in the later Eleventh Circuit case, outstanding requests for discovery remained unanswered. Finding that the plaintiff had not waived merits discovery, that it was not at fault in failing to conduct discovery, and that the outstanding requests and other materials were sufficient to serve the purposes of Rule 56(f), the court vacated the grant of summary judgment and remanded for further proceedings.

In an opinion offering a particularly detailed analysis of Rule 56(f), the First Circuit found an abuse of discretion in a grant of summary judgment that was entered while discovery remained incomplete. *Resolution Trust Corp. v. North Bridge Associates*, 22 F.3d 1198 (1st Cir.1994). The court was not implying that every instance of incomplete discovery would be enough to prevent summary judgment, nor would we agree with such a proposition if it were advanced. Instead, it evaluated five criteria for a Rule 56(f) motion—authoritativeness, timeliness, good cause, utility, and materiality—and found that the motion should have been granted in the case before it. *Id.* at 1203. It noted also that the facts needed to oppose summary judgment were within the exclusive control of the defendant and that the incompleteness of discovery was the defendant's fault. *Id.* at 1208. It remanded, explaining Rule 56(f) should ensure that "a litigant who fails to answer potentially relevant discovery requests on schedule will be unable to demand summary judgment until after he remedies his failure." *Id.*

This Court recently had occasion to rule on a similar problem in a suit brought by a state prisoner against various correctional officials that was dismissed as frivolous by the district court at the same time the court denied *in forma pauperis* status. *Billman v. Indiana Department of Corrections*, 56 F.3d 785 (7th Cir.1995). The *pro se* inmate plaintiff, Billman, was attempting to raise a claim that he had been raped by his cellmate, and that the prison officials and guards knew of the cellmate's violent propensities and HIV-positive status and yet took no action either to inform Billman of the risk or to protect him. Billman's problem was his inability to find out which official or officials was responsible for his cell assignment. This Court held that "[i]f a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous." *Id.* at 789. It stressed that this was not a rule peculiar to prisoner cases, but instead was a rule that would apply to anyone who could not reasonably be expected to identify the wrongdoers without the aid of pretrial discovery. *Id.* Finally, the Court stated that "it is the duty of the district court to assist him, within reason, to make the necessary investigation." *Id.* at 790. See also *Sellers v. Henman*, 41 F.3d 1100 (7th Cir.1994) (failure to give *pro se* prisoner notice and opportunity to submit counter-affidavits on summary judgment was abuse of discretion); *LaBatt v. Twomey*, 513 F.2d 641, 650 (7th Cir.1975) (noting how difficult it can be for prisoners to secure the necessary affidavits to oppose summary judgment).

**III**

▮ Applying these principles to Farmer's case, we conclude that the district court abused its discretion when it denied all efforts by Farmer's new lawyer to obtain enough time to formulate a responsible Rule 56(f) motion and corresponding set of discovery requests that were properly tailored to the Eighth Amendment standards estab-

lished in the Supreme Court's opinion. The defendants failed to respond within the time established by the rules to Farmer's 1991 discovery requests; the district court did not explain why it found certain requests relevant and others irrelevant after the remand from the Supreme Court; and the district court ignored the Supreme Court's own observation that the record as of the time it reached that Court appeared to indicate that there were disputed issues of fact about the degree of knowledge possessed by defendants. —— U.S. at ——, 114 S.Ct. at 1985. Finally, in light of the relatively brief sojourn of Farmer's case in the district court on remand, there is no basis for the court's decision to treat this as a case in which counsel simply "chose" not to respond and instead to engage in dilatory tactics.

As noted above, Farmer had served a Request for Production of Documents on one of the defendants on December 11, 1991. That handwritten *pro se* Request, notwithstanding its prolixity, shows that Farmer was seeking information that would have been central to her theory of the case. Request 2, for example, asked for "copies of PreScreening Reports regarding the plaintiff prepared by the Bureau of Prisons." These reports might have demonstrated that the defendants did have reason to believe Farmer faced a substantial risk of serious harm within the meaning of the Supreme Court's opinion. Request 9 read as follows:

> You are requested to produce any and all documents you believe reflect the type of offenders designated to USP–Terre Haute and/or the environment of USP–Terre Haute during the years of January 1, 1988 to January 1, 1991.

Farmer's theory was that the defendants knew that an assault such as the one she allegedly experienced was a virtual certainty at Terre Haute. Information about the type of offenders and the environment there might have been relevant to both the objectively serious nature of the risks she faced and to the likelihood that the prison officials knew of those risks. Request 10 might have helped prove the same elements of her case. It sought information about "administrative remedies filed with the Bureau of Prisons North Central Region ... by inmate(s) at

USP Terre Haute, that request, reflect, allege or otherwise involve assaultive behavior; ... sexual misconduct; ... sexual proposals or threats" for the same time period as Request 9. Although these requests might have been phrased more artfully and handled better in the hands of an experienced lawyer, they are more than enough to indicate the kind of information Farmer should have had the chance to develop on remand.

Although the defendants imply that Farmer's requests were irrelevant, or at least too broad, they never put this view to the test. If this was indeed their position, the proper course would have been for them to file specific objections to the Request within the 30–day period permitted by Rule 34(b) for service of a written response. Farmer then could have responded with a motion to compel under Rule 37(a), and the court could have ruled on the matter. The record does not reflect any scheduling order under Rule 16 or any other order under Rule 26(b)(2) that might have justified the defendants' actions. No stipulated extension of time for responding under Rule 29 existed, either with or without approval of the court. This failure to comply with the procedures prescribed by the Federal Rules of Civil Procedure on the part of the defendants has caused part of the problem we now face. It means, among other things, that when the district court reconsidered the case upon remand from the Supreme Court, it did not have the kind of record in front of it that would have allowed it to make a proper Rule 56 determination. There had been no exploration of the scope of relevant discovery, and there were no legal rulings explaining the district court's thinking that would permit effective appellate review.

It is also worth noting that the defendants' failure to comply with the time limits prescribed by Rule 34, and the district court's tolerance for this behavior, resulted in the destruction of evidence that might have been helpful to Farmer. She had requested records of all administrative remedies filed with the Bureau of Prisons by inmates at USP–Terre Haute that "allege assaultive behavior, *sexual misconduct, sexual proposals or threats,* danger to an inmate, need for protection, transfer for danger or protection filed during the period of January 1, 1988,

through April 15, 1989"—that is, the time leading up to and just after her alleged rape and assault. The district court agreed that this request was proper, and it ordered defendants to comply with it on remand. Defendants responded this time, but only with three affidavits showing that pursuant to the document retention policy of the Bureau of Prisons, these records had been destroyed. They would have been available in 1992, when Farmer first sought them, but they were gone by 1994. In their place, defendants furnished much more general information about the incidence of disciplinary measures at Terre Haute, which from our own examination does not appear to separate out different kinds of incidents. If the records are gone, they are gone. Nonetheless, the fact that even the district court agreed to compel this discovery underscores Farmer's legitimate need to have a meaningful chance to pursue other avenues of discovery, through which she might obtain as close to equivalent information as she can, before the court addresses the appropriateness of summary judgment.

The basis of the district court's 1994 summary judgment ruling was Farmer's alleged "failure to submit any factual opposition to defendants' motion." We are unable to accept this characterization of Farmer's and her lawyer's efforts on remand. Farmer's lawyer was making a reasonable effort to set up a schedule for the case, particularly in light of the court's September 8, 1994, decision to deny his request to withdraw. He succeeded in obtaining a narrow ruling from the court on September 22, 1994, directing Quinlan to respond to one paragraph of the December 1991 Request for Documents, but he never had a chance to formulate and to present to the court a new Rule 56(f) motion that properly narrowed the issues after the Supreme Court's decision. Both Farmer and her lawyer repeatedly called the court's attention to the need for more time for discovery. They did not learn until October 5 how limited the defendants' response to the one item of discovery ordered by the court would be, and by then they were looking at a November 1 deadline for their response to the summary judgment motion. The fact that they were not able to undertake new discovery during that three-week period and come up with a comprehensive response to the motion is hardly surprising. It certainly does not suggest waiver, laziness, or abuse of process on their part.

Farmer's attorney on appeal has suggested that her *pro se* requests for discovery produced enough evidence to defeat summary judgment, but we do not agree that we can go this far. What those requests do indicate, however, is the reasonable likelihood that relevant materials might be found upon proper discovery. They thus show that the Rule 56(f) process here is not an empty one that the court could appropriately nip in the bud. Compare *Schaffer v. A.O. Smith Harvestore Products, Inc.,* 74 F.3d 722, 731 (6th Cir. 1995) ("Rule 56(f) is not a substitute for diligently pursuing discovery"); *Jarvis v. Noble/Sysco Food Services Co.,* 985 F.2d 1419, 1422 (10th Cir.1993) (non-movant's conclusory statement that "he [was] unable to obtain the information" is insufficient to warrant 56(f) continuance). Farmer did reasonably well for herself as a pro se plaintiff, but there is much that an experienced lawyer could criticize in her requests. We therefore wish to stress that we are not holding here that the district court should have granted those requests in their entirety, or even that it should have granted particular sections. Our point is more process-oriented: if the district court wanted to require Farmer's solo practitioner lawyer to remain in the case, it should have provided enough time for a meaningful exploration of the issues that the Supreme Court remanded; if the district court wanted things to move along more quickly, it should have considered more seriously the possibility of appointing new counsel with more resources who could have complied with a faster schedule without prejudice to the same kind of careful reconsideration of the case on remand.

## IV

■ With respect to the particular defendants, all but one of them must remain in the case at this still-early stage. The exception is Quinlan, who Farmer conceded in her brief before this Court had no personal knowledge of the transfer and who thus cannot be liable under the standard set forth in the Supreme Court's opinion. In remanding this case, we do not prejudge whether or not any or all of the rest of these defendants might properly

be dismissed once the facts are developed further. We also do not prejudge the propriety of summary judgment more generally once the kind of process we have described has taken place. The decision below is AF-FIRMED as to defendant Quinlan, and with respect to the other defendants it is VACATED and the case is REMANDED for further proceedings consistent with this opinion.