In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3325

SHEILAR SMITH, *et al.*, on behalf of themselves and all others similarly situated and on behalf of the OSF plans,

*Plaintiffs-Appellants*,

*v.*

OSF HEALTHCARE SYSTEM, *et al.*,

*Defendants-Appellees*,

*and*

UNITED STATES OF AMERICA,

*Intervening-Appellee*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:16-cv-00467-SMY-RJD — **Staci M. Yandle**, *Judge*.

ARGUED MAY 15, 2019 — DECIDED AUGUST 13, 2019

Before WOOD, *Chief Judge*, and EASTERBROOK and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. The decisive issue in this appeal is whether the district court abused its discretion in granting

summary judgment for defendants despite plaintiff's motion under Federal Rule of Civil Procedure 56(d) to postpone a summary judgment decision so that she could complete further discovery. District courts have considerable discretion in such case-management decisions, but that discretion is not unlimited. The record here shows, unfortunately, that the court's denial of plaintiff's Rule 56(d) motion was an abuse of that discretion. The summary judgment motion was filed long before discovery was to close; plaintiff was pursuing discovery in a diligent, sensible, and sequenced manner; and the pending discovery was material to the summary judgment issues. The district court's explanation for denying a postponement overlooked the court's earlier case-management and scheduling decisions and took an unduly narrow view of facts relevant to the case.

We therefore vacate the grant of summary judgment and remand for further proceedings consistent with this opinion. We explain in Part I the role and definition of the ERISA exemption for "church plans." In Part II, we summarize the limited facts available to us about these parties and the merits of their dispute. In Part III, we address the standards for Rule 56(d) motions and potential reasons for denying them. We do not decide the merits of the parties' dispute, though we must discuss the merits along the way to provide context for the Rule 56(d) issue.

I.  *ERISA and the Exemption for Church Plans*

The underlying issue in the case is whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., applies at all to the pension plans offered by defendant OSF HealthCare System, a religious nonprofit

organization that operates eleven hospitals in Illinois and Michigan.

ERISA sets minimum standards for the pension and welfare benefit plans offered by private employers. 29 U.S.C. §§ 1001(a), 1002(1)–(2). Congress enacted ERISA in response to a "rapid and substantial" increase in employee benefit plans that were lacking in "adequate safeguards"—with often-catastrophic results for employees and their families—as employees and their beneficiaries lost anticipated benefits because of unsound and unstable plans, unfair vesting provisions, and termination of plans before benefits had been funded. 29 U.S.C. § 1001(a).

The Supreme Court has described ERISA as a "'comprehensive and reticulated statute' with 'carefully integrated civil enforcement provisions.'" *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 258 (2008), quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). At bottom, the goal of ERISA is to ensure the delivery of promised benefits. To achieve that goal, ERISA imposes minimum standards for benefit funding and vesting, grievance and appeals processes, and fiduciary duties. 29 U.S.C. §§ 1053, 1083, 1104, 1132. Participants of benefit plans that are governed by ERISA have the right to sue for benefits and breaches of fiduciary duty. 29 U.S.C. §§ 1132, 1109. If ERISA plans are terminated without adequate funding, some payments of benefits can be available through the Pension Benefit Guaranty Corporation. 29 U.S.C. § 1302.

Congress, however, exempted certain categories of employee benefit plans from ERISA. One is the "church plan" exemption at issue here. 29 U.S.C. § 1003(b)(2). Since enactment in 1974, ERISA has provided that it "shall not apply to

any employee benefit plan if…such plan is a church plan (as defined in section 1002(33) of this title)." *Id.* The definition in § 1002(33) originally applied only to plans "established and maintained" for the employees of churches or associations of churches, so that it would not have applied, for example, to hospitals affiliated with churches. *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1656 (2017); 29 U.S.C. § 1002(33)(A). In 1980, Congress amended the church plan exemption. Under the amended version, the exemption extends not only to plans for employees of churches but also to plans for employees of church-affiliated organizations. 29 U.S.C. § 1002(33)(C)(ii)(II).

Central to this case, the amendment added the following language:

> A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches.

29 U.S.C. § 1002(33)(C)(i). That's "a mouthful," as the Supreme Court said, but "to digest it more easily, note that everything after the word 'organization' in the third line is just a (long-winded) description of a particular kind of church-

associated entity." *Advocate Health*, 137 S. Ct. at 1656. The Court referred to the church-associated entity as a "principal-purpose organization," *id.*, and for clarity's sake, so do we.

In *Advocate Health*, the issue was whether the church plan exemption depends on who first established the plan. The Supreme Court held: "Under the best reading of the statute, a plan maintained by a principal-purpose organization … qualifies as a 'church plan,' regardless of who established it." *Id.* at 1663. The language in § 1002(33)(A) and (C)(i) thus makes the church plan exemption available to pension plans and other employee benefit plans established by church-associated entities, such as church-associated hospitals, where the plans are maintained by principal-purpose organizations. *Id.* We now turn to the facts of this case, where the central issues on the merits are who qualifies as a principal-purpose organization and what it means to "maintain" or "administer" an employee benefit plan.

II. *The Parties, Their Pension Plans, and Their Dispute*

The Sisters of the Third Order of Saint Francis, a Roman Catholic organization, founded the OSF HealthCare System in 1880. OSF is a nonprofit Catholic healthcare system that provides free or discounted care to indigent patients. The Sisters of the Third Order of Saint Francis is the only member of OSF. The Order maintains authority over the system through OSF's governing documents and the canonical and civil guidelines pertaining to church property. In 2014, OSF merged with another Catholic hospital, St. Anthony's Health Center, with the permission of the Holy See. Prior to the merger, St. Anthony's was run by the Sisters of St. Francis of the Martyr of St. George. We refer to these organizations collectively as "OSF."

The parties agree that OSF is associated with a church. OSF's operation is intertwined with the Roman Catholic Church. For example, among several other religious requirements not relevant here, OSF must seek approval from the Church for loan and debt financing, is subject to oversight by the bishops of the dioceses in which it operates, and is recognized by the Official Catholic Directory as a Catholic Institution.

OSF and St. Anthony offered pension plans to their employees before the merger. After the merger, the OSF and St. Anthony's pension plans remained distinct. The Plans have approximately 19,285 participants between them. The Plans are now closed to new participants and have stopped accruing further benefits. The OSF plan has 17,946 participants and the St. Anthony's plan has 1,339. Both plans are now administered as ERISA-exempt church plans.[1]

OSF contends that the St. Francis Plan and the St. Anthony's Plan are administered by the Sisters of the Third Order of St. Francis Employees' Pension Plan Administrative Committee and the Saint Anthony's Health Center Retirement Committee, respectively, though the two have identical

---

[1] Both plans received private letter rulings from the IRS finding that they are church plans under 26 U.S.C. § 414(e). Upon taxpayers' requests, the IRS may issue private letter rulings interpreting and applying tax laws to the specific facts of a taxpayer's situation. 26 C.F.R. § 601.201(a)(2). They are not issued after formal adjudication or notice-and-comment procedures that may warrant substantial deference from courts. See *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (less formal agency determinations deserve less deference from courts). IRS regulations provide that private letter rulings are not precedential. See 26 C.F.R. § 301.6110–7(b); *Bankers Life and Casualty Co. v. United States*, 142 F.3d 973, 978 (7th Cir. 1998).

memberships. (We refer to them as the "Committees.") OSF contends that each Committee qualifies as a principal-purpose organization within the meaning of § 1002(33)(C)(i), so that the Plans need not comply with ERISA at all.

Plaintiff Sheilar Smith, a former employee and participant of one of the OSF pension plans, sued on behalf of herself and other similarly situated plaintiffs in the Southern District of Illinois. She alleged that the Plans are not eligible for the church plan exemption because (a) the Committees are not "principal-purpose organizations" within the meaning of ERISA, and (b) even if they were, the church plan exemption itself is unconstitutional. She alleged that OSF has violated ERISA by allowing the Plans to become severely under-funded, with the OSF Plan holding assets sufficient to fund only 56% of accrued benefits and the St. Anthony's plan only 54%. She alleged that OSF also failed to follow the proper notice, disclosure, and managerial requirements, and breached its fiduciary duties.

The heart of the merits debate is whether the Committees can qualify as principal-purpose organizations at all. Smith offers several layers of argument. She contends that an internal committee of a church-associated organization cannot qualify at all as such an organization. She also contends that mere "administration" of a plan does not necessarily equate to "maintaining" the plan, as required by statute, which she believes requires the authority to terminate or modify the plan. And she argues that the Committees in this case may not even actually administer these Plans, pointing to evidence that the Committees meet only rarely and briefly. Finally, she contends that even if these Plans qualify for the church plan exemption, the exemption itself violates the Establishment

Clause of the First Amendment. OSF counters that the plain language of the statute, relevant case law, legislative history, and common sense all permit it, as a church-associated organization, to delegate administration of the Plans to the Committees, and that the exemption fits comfortably within First Amendment law.

III. *The Rule 56(d) Issue*

A.  *Rule 56(d)*

Federal Rule of Civil Procedure 56(b) provides that, unless local court rules or a case-specific order provide otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery. Rule 56(d) provides that, after a party moves for summary judgment:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> >
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3) issue any other appropriate order.

The mere fact that discovery is incomplete is not enough to prevent summary judgment. *Farmer v. Brennan*, 81 F.3d 1444, 1450 (7th Cir. 1996), citing *Resolution Trust Corp. v. North Bridge Associates*, 22 F.3d 1198 (1st Cir. 1994). A party seeking relief under Rule 56(d) must show by affidavit or declaration specific reasons discovery should be extended, which requires more than a fond hope that more fishing might net

some good evidence. *Davis v. G.N. Mortgage Corp.* 396 F.3d 869, 885 (7th Cir. 2005) (affirming denial of 56(d) motion when plaintiffs' request was "based on nothing more than mere speculation"); *Kallal v. CIBA Vision Corp.*, 779 F.3d 443, 446 (7th Cir. 2015) (affirming denial of Rule 56(d) request for additional discovery where party did not submit affidavit as required). In addition, a court need not delay decision on a summary judgment motion to allow time for discovery on an obviously meritless claim or defense. *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2017).[2]

Motions for summary judgment have become so common in modern federal civil practice that case-management plans often assume that one or even more motions will be filed. Parties and district courts ordinarily set schedules not only for trial dates but also for discovery and motion practice that allow time for summary judgment motions and the discovery needed to file or oppose them. See Fed. R. Civ. P. 16(c)(2)(E) & (F) (topics for pretrial conference). Accordingly, decisions on Rule 56(d) motions—whether granted or denied—can be a critical tool in fair case management.

Appellate courts review decisions on Rule 56(d) motions for abuse of discretion. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 622–23 (7th Cir. 2014). "As is true for most matters relating to discovery, the district court has substantial discretion in ruling on a [Rule 56(d)] motion." *Farmer*, 81 F.3d at

---

[2] Before the 2010 amendments to the Federal Rules of Civil Procedure, Rule 56(d) was 56(f). Because no substantive changes were made to this portion of the rule, cases that analyzed the old Rule 56(f) remain applicable, but we describe them using the current designation of 56(d).

1449. This latitude has its limits, however. *Id.* at 1450–51 (vacating summary judgment).

Appellate courts often remand a denial of additional time for discovery when the motion for summary judgment is filed before the close of discovery, especially if there are pending discovery disputes. *Farmer*, 81 F.3d at 1450–51 (district court abused discretion by denying Rule 56(d) motion that sought opportunity to conduct discovery under new legal standard after remand from Supreme Court); see also *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (vacating summary judgment as premature when plaintiff was denied any opportunity for discovery on material issues); *Burlington Northern Santa Fe Railroad Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003) (denial of Rule 56(d) motion was abuse of discretion: when "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule [56(d)] motion fairly freely"); *Wichita Falls v. Banc One*, 978 F.2d 915, 920 (5th Cir. 1992) (reversing denial of Rule 56(d) motion: "When a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery.").

For example, in the D.C. Circuit, summary judgment is considered premature unless all parties have had a full opportunity to conduct discovery, and the court has written that Rule 56(d) motions "requesting time for additional discovery should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Convertino v. United States Dep't of Justice*, 684 F.3d

93, 99 (D.C. Cir. 2012), quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995). This approach is not unique. See *In re PHC, Inc. Shareholder Litigation*, 762 F.3d 138, 145 (1st Cir. 2014) (premature for district court to consider summary judgment in light of plaintiffs' Rule 56(d) motion when pending discovery requests were not yet answered); *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (noting that summary judgment is disfavored if discovery is incomplete: "summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim"); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (request for additional time to conduct discovery should be granted "almost as a matter of course" when court learns the "diligent efforts to obtain evidence from the moving party have been unsuccessful"). We need not go as far as "almost as a matter of course," but these precedents emphasize the importance of allowing a party the opportunity to take meaningful discovery before granting summary judgment against her.

Rule 56(d) itself requires an affidavit or declaration giving specific reasons why the party cannot present facts essential to opposing a motion for summary judgment. Plaintiff satisfied that requirement here. The cases discussed above show that the sound reasons for denying a properly supported Rule 56(d) motion most often are either (1) the moving party's failure to pursue discovery diligently before the summary judgment motion, or (2) the apparent futility of the requested discovery.

In this case, the district court's brief explanation for denying plaintiff's Rule 56(d) motion invokes both reasons. Here

was the explanation, which was included in the court's ruling on the merits of summary judgment:

> As an initial matter, Plaintiffs argue that De-fendants' motion for summary judgment was filed prematurely. F.R.C.P. 56(d) permits, but does not require, the Court to defer considera-tion of a summary judgment motion or to allow additional time for discovery, among other op-tions. While there are numerous areas of inquiry that Plaintiffs state they would have explored prior to the filing of summary judgment mo-tions, those pertinent to the instant motion have been at issue from the outset of this case. Al-though Defendants filed for summary judgment well before the extended discovery deadline, Plaintiffs had ample time and opportunity to conduct discovery relevant to the issues raised in Defendants' motion. As such, the Motion is not premature.

*Smith v. OSF Healthcare System*, 349 F. Supp. 3d 733, 739–40 (S.D. Ill. 2018). In a later footnote, the court briefly discussed Smith's assertion that discovery could show the Committees were not actually the ones administering the plans. The court seemed to view such discovery as futile, saying that "the question is not whether the Plan Committees are doing their jobs well or excessively delegating their authority, but rather whether the structure satisfies the requirements of the church plan definition." *Id.* at 743 n.4. In our view, however, plaintiff established a strong record of diligence, and at least some of the additional discovery sought in her Rule 56(d) motion would not have been futile.

B.  *Diligence*

The district court's primary reason for denying the plaintiff's Rule 56(d) motion was its view that plaintiff had failed to act diligently to conduct the discovery she said she needed to respond to the motion for summary judgment. The district court pointed out correctly that the need for the discovery she sought, such as details of plan administration, had been apparent from the early stages of the case. The court's explanation overlooked, however, the earlier delays imposed on plaintiff by the court itself and by the defendants. The explanation also overlooked the plaintiff's sensible approach to staging discovery so that, for example, document discovery would be essentially complete before plaintiff took depositions of key witnesses (thus minimizing the risk that second depositions would be needed if important documents surfaced after the depositions).

To explain our resolution of this issue, we need to review the proceedings in the district court in some detail. Smith filed her complaint on April 27, 2016. Defendants sought a change of venue, which was denied. The parties then agreed, as is common, to a sequenced discovery schedule for document production, interrogatories, electronically stored information, and depositions. See Fed. R. Civ. P. 16(c), 26(f). The magistrate judge issued a scheduling order on September 26, 2016 with a discovery cut-off of November 2017 and a trial date in March 2018.

Yet just three days after the court issued that agreed scheduling order, defendants moved to stay all discovery pending ruling on a petition for a writ of certiorari in one of the cases that the Supreme Court eventually heard as *Advocate Health*. The district court denied that stay, and discovery began, as

indicated by the court's docket entry setting a discovery dispute conference for January 5, 2017. See Dkt. 111, at 11, 21–22 (court discussing pending discovery requests and disputes). In the meantime, however, the Supreme Court had granted certiorari in the *Advocate Health* cases on December 2, 2016. On January 6, 2017, defendants moved to stay discovery and all court proceedings. Plaintiffs objected to a complete stay. The court concluded that it made sense to continue with document discovery but to delay expensive depositions until the Supreme Court could rule in *Advocate Health*. Dkt. 111 at 38–41.

The Supreme Court decided *Advocate Health* on June 5, 2017. The district court then stayed all discovery until July 25, 2017, and ordered the parties to submit a revised scheduling order. The new, agreed scheduling order was issued August 10, 2017, with discovery to be completed by September 6, 2018, dispositive motions due by September 21, 2018, and a bench trial set for January 7, 2019.

The parties resumed discovery, but not everything was done at once. OSF produced additional documents between the end of August and November 10, 2017, but the parties had substantial disagreements about OSF's compliance with pending requests. See Dkt. 162-1 ¶¶ 7, 10. In November and December, plaintiff's counsel sent OSF two letters on discovery issues, including the production of electronically stored information, with an emphasis on emails related to plan administration. Dkt. 162-1 ¶11; Dkt. 162-3. During this period, counsel also held a telephone conference to discuss their disagreements over the pending requests for production of documents and the search terms to be used for the electronic records. Dkt. 162-1 ¶12.

On December 22, 2017, plaintiff's counsel sent three depo-sition notices to OSF with a letter explaining the requested discovery she still had not received. Dkt. 162-5. She said in the letter that if the parties did not reach a resolution by January 4, 2018, she would seek a resolution before the magistrate judge. OSF made additional production of documents five days later but did not address the issues raised in the Decem-ber 22 letter.

Then, on December 29, 2017, a week after plaintiff's coun-sel sent that letter, OSF filed its motion for summary judg-ment. The motion was filed almost nine months before the scheduled close of discovery, and despite the pending depo-sition notices and unresolved issues surrounding production of electronically stored information. OSF's motion argued that further discovery would be pointless in light of the Su-preme Court's decision in *Advocate Health* and the Tenth Cir-cuit's then-recent decision in *Medina v. Catholic Health Initia-tives*, 877 F.3d 1213 (10th Cir. 2017).

In response, plaintiff quickly moved under Rule 56(d) to defer briefing on the motion for summary judgment. Her mo-tion was supported by counsel's affidavit providing specific reasons and needs for additional discovery. She told the court that the parties had pending discovery disputes, that she had yet to obtain documents and emails within the defendants' control, and that she had served notices for several deposi-tions. She also identified the types of the information she needed to discover, including information from emails and depositions that could show the Committees were not the ones administering the plans at all. Plaintiff also pointed out that defendants had offered affidavits in their motion for sum-mary judgment from expert witnesses who, before the motion

for summary judgment was filed, had not yet even been disclosed to plaintiff's counsel, let alone subject to depositions.

Given this history, we do not see a basis for saying that plaintiff had failed to pursue discovery diligently. We assume plaintiff's counsel knew from the outset that they would probably need to take the depositions that they noticed in December 2017 and that were the subject of her Rule 56(d) motion. Counsel and their client should not be penalized with dismissal, however, for not having taken those depositions earlier. Depositions are expensive, as the district court acknowledged when it stayed depositions in early 2017. Lawyers in paper-heavy cases like this one know that it generally makes sense not to take a witness's deposition until they have the relevant documents in hand. That's why the parties staged discovery as they did in this case, of course, and why it would have been premature to take the depositions before the plaintiff's deadline for responding to defendants' very early summary judgment motion.[3]

C. *Relevant or Futile?*

Another sound reason for denying a Rule 56(d) motion may be that the additional discovery being sought would be futile. As this appeal shows, however, it can be risky to deny

---

[3] In the interests of fairness and economy, we encourage district courts to act promptly on pending motions under Rule 56(d) because of their effects on briefing schedules for summary judgment motions. In this case, the court did not actually deny plaintiff's motion until it also ruled on the summary judgment motion. As a result, plaintiff had to brief the summary judgment motion without knowing the court's view of the Rule 56(d) motion. A belated grant of a Rule 56(d) motion or a reversal of a denial of such a motion can waste time and money as counsel must in essence brief the summary judgment motion twice.

discovery based on a theory that the law makes the discovery irrelevant, especially where that legal proposition is contested and the area of law is evolving quickly. If a district court denies a Rule 56(d) motion based on an erroneous view of the applicable substantive law, and thus of the relevance of the additional discovery sought, an abuse of discretion is likely. See *Farmer v. Brennan*, 511 U.S. 825, 849 & n.10 (1994) (noting that district court had denied Rule 56(d) motion based on erroneous view of law), cited in *Farmer*, 81 F.3d at 1448 (appeal after remand).

The question of futility requires us to dip into the merits, at least tentatively. Plaintiff Smith herself makes an argument on the merits that would eliminate any need for further discovery. She argues that OSF's Plan Committees cannot qualify as principal-purpose organizations because they are not juridical entities legally distinct from OSF itself. We disagree with that point and believe that internal benefits committees like OSF's can qualify as "organizations" that could, assuming the other statutory requirements were met, serve as principal-purpose organizations under § 1002(33)(C)(i). The statute notes parenthetically that such an "organization" may be "a civil law corporation or otherwise." *Id.* That last word is capacious. It does not require that the organization in question be any particular type of non-corporate legal entity nor, indeed, an entity legally separate from the plan sponsor at all.

On a related note, under any reading of the term "principal purpose," a committee constituted specifically to manage employee benefit plans could qualify. The purpose of the organization maintaining or administering a church plan need not be the same as that of the plan sponsor itself. After all, no pension    sponsor    ever    has    the    provision,    let    alone

maintenance, of a pension or other employee benefit plan as its principal purpose. Its principal purpose is the enterprise that employs the people who participate in the benefit plans.

Further discovery on remand, however, will not be futile. The district court here believed—leaning heavily on the Tenth Circuit's opinion in *Medina v. Catholic Health Initiatives*, 877 F.3d 1213 (10th Cir. 2017)—that no amount of discovery could save plaintiff's case. The district court wrote that *Medina* was "well-reasoned and essentially 'on all fours' with this case" and followed *Medina* in granting summary judgment.

*Medina* presented similar issues in applying the ERISA church plan exemption to a hospital chain affiliated with the Roman Catholic Church, where the plans were administered by internal committees established by the employer. 877 F.3d at 1220. The Tenth Circuit applied the statute's requirements through a three-step inquiry. The first step asks whether the entity seeking to use the church plan exemption under the principal-purpose option is itself "a tax-exempt nonprofit organization associated with a church." *Id.* at 1222. If it is, the second step asks whether "the entity's retirement plan [is] maintained by a principal-purpose organization? That is, is the plan maintained by an organization whose principal purpose is administering or funding a retirement plan for entity employees?" *Id.* If that answer is also yes, the third step asks whether "that principal-purpose organization [is] itself associated with a church." *Id.* Applying this test, the Tenth Circuit determined that committees assigned to administer the religious nonprofit's benefit plans can constitute principal-purpose organizations and affirmed summary judgment for the hospital system. *Id.* at 1226. *Medina* further held that the church plan exemption does not violate the Establishment

Clause. *Id.* at 1234, discussing *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971).

*Medina* does not justify the denial of plaintiff's Rule 56(d) motion for two related reasons. First, of course, *Medina* was decided on a motion for summary judgment filed after the parties completed discovery, providing a more complete factual record. Second, we are not prepared, at this point, to commit ourselves to the *Medina* test, or at least to this district court's interpretation of *Medina*, under which, for example, it would not matter if the Committees formally charged with plan administration did not actually administer them. See *Smith*, 349 F. Supp. 3d at 743 n.4. In this case, which presents at least genuine issues of material *law*, it would be more prudent to know more about the potentially relevant facts before deciding they are not relevant.

For example, recall that 29 U.S.C. § 1002(33)(C)(i) provides that a "plan established and maintained for its employees … includes a plan maintained by an organization … the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits…." This statutory language of § 1002(33)(C)(i) might reasonably be read to imply that a principal-purpose organization must *actually* administer the plan. The district court rejected this argument in a footnote, stating that "the question is not whether the Plan Committees are doing their jobs well or excessively delegating their authority, but rather whether the structure satisfies the requirements of the church plan definition." 349 F. Supp. 3d at 743 n.4. We do not share, at least at this point, that confidence that only paper formalities matter. In light of the language and purpose of the statute, one arguable reading of § 1002(33)(C)(i) is that a

Committee's excessive delegation of its authority and responsibility could amount to a failure to "maintain" the Plan—a concept which in its ordinary meaning encompasses, but is not necessarily limited to, "administration or funding"—as required by the statute.

Plaintiff Smith argues that OSF has thus far refused to produce evidence that could show whether the Committees that were at least formally charged with administering these Plans actually did so in reality. She has offered evidence that the Committees met rarely and briefly. The Committee for the OSF plan met for a total of only seventy minutes over an eight-year period. The Committee for the St. Anthony Plan met only twice from 2010 to 2017. Plaintiff argues that this evidence at least suggests that the committees may not be really administering the plans at all, making discovery of internal emails and other communications, and depositions of key personnel, vital to her ability to defend summary judgment.

OSF acknowledged at oral argument that merely naming a committee that never actually met or administered the plan would not be enough to satisfy the statute. OSF is not necessarily entitled to summary judgment just because it has produced documents showing how the Plans are supposed to be run. If further discovery reveals, as a practical matter, that the Committees exist only on paper, then it is possible the Plans are not actually exempt from ERISA. Accordingly, upon remand, the district court must allow relevant discovery and should then assess whether OSF's Plan Committees did, *in fact*, serve as principal-purpose organizations qualifying the Plans for exemption from ERISA.

OSF offers a couple of additional reasons to justify the denial of the Rule 56(d) motion. It contends that the search terms

proposed by plaintiff for electronic records amount to a pro-
verbial fishing expedition because they would reach every
email ever sent by the Committees. This is not a convincing
reason to deny all further discovery. Discovery was cut off, in
effect, when the parties had barely begun to negotiate the
search terms, let alone asked the court to resolve the dispute.
In fact, Smith was still waiting for a response to her proposed
custodian list and search terms for electronic discovery when
OSF moved for summary judgment and discovery ended.

OSF also cites plaintiff's failure to file a motion to compel
as evidence that she was not diligently pursuing discovery.
The argument only serves to emphasize how premature this
summary judgment decision was. Parties are expected to
meet and confer at least once to resolve their discovery dis-
putes before requesting help from the court. Fed. R. Civ. P.
37(a)(1). A party's compliance with that requirement should
not be held against her in deciding a Rule 56(d) motion.[4]

*   *   *

Concurring in *Advocate Health*, Justice Sotomayor ob-
served that organizations like OSF "bear little resemblance to
those Congress considered when enacting the 1980 amend-
ment to the church plan definition." 137 S. Ct. at 1663. Smith
has alleged OSF is underfunding its pension by nearly half,
perhaps jeopardizing the benefits of thousands of hospital
and health-care employees who depend upon these Plans.

---

[4] We have not forgotten Smith's Establishment Clause argument,
which she presents as an as-applied challenge. Because the factual picture
remains too underdeveloped to decide even the application of the statute,
we do not address the constitutional question now. Those issues can await
further development.

With such high stakes, beneficiaries are entitled to conduct meaningful discovery before the courts decide legal issues such as whether formal structures are sufficient to satisfy the church plan definition, regardless of day-to-day realities.

The judgment of the district court is VACATED and this case is REMANDED for further proceedings consistent with this opinion.